1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JERRY ARMSTRONG,

11            Plaintiff,                    No. CIV-S-07-1046 GEB GGH PS

12       vs.

13   SISKIYOU COUNTY SHERIFF'S                      ORDER and
     DEPARTMENT, et al.,              FINDINGS AND RECOMMENDATIONS
14
              Defendants.
15   _____/

16            Presently pending before this court is defendants' motion to dismiss or for more

17   definite statement, filed October 12, 2007.  Plaintiff filed his opposition on November 28, 2007,

18   and defendants filed their response on December 6, 2007; the hearing scheduled for December 6,

19   2007 was vacated and the matter submitted for decision on the papers.  Plaintiff thereafter filed a

20   "Motion for Release of Current Court Findings and Judgments," in response to which defendants

21   filed a statement of nonopposition.

22            For the following reasons, this court recommends that defendants' motion to

23   dismiss be granted in part and denied in part, and their alternate motion for more definite

24   statement be denied.  The court denies without prejudice plaintiff's "motion for release of

25   findings and judgments."

26   / / / /

1

BACKGROUND

On June 25, 2007, this court granted plaintiff's application to proceed in forma pauperis and dismissed plaintiff's complaint with leave amend.  On July 12, 2007, plaintiff timely filed the now operative amended complaint which makes the following allegations.  In June 2006,[1] following his release from Solano State Prison, plaintiff went as instructed to the Siskiyou County Sheriff's Department where he was in turn instructed to report to a parole office in Weed, California.  Upon being informed at the Weed parole office that he was not to communicate with family or friends, plaintiff returned to the Siskiyou County Sheriff's Department to see if he could obtain a modification of this parole condition.

At the Sheriff's Department, Deputy Behr Tharsing informed plaintiff ("as conf[i]rmed by Sheriff's complaint form and the parole office") that "that there was a halfway house up the road."  After proceeding part way to the halfway house, plaintiff paused, "trying to stop depretion [sic] from taking hold" and decided not to continue; he returned downtown "not really knowing w[h]ere I was going to stay or what I was going to due [sic]."  Plaintiff was stopped by Deputy Tharsing and an unidentified Yreka police officer in the Payless parking lot.  Plaintiff states that Deputy Tharsing became belligerent, informed plaintiff that he was "walking in the wrong direction," and insisted that plaintiff stay at the halfway house ("leaving no dought [sic] in my mind that I was being given a direct order").  Plaintiff went to the halfway house and spent the night.

The next morning, plaintiff returned to town to get some clothes, pursuant to instructions from halfway house staff, and passed by the Sheriff's Department parking lot.  Deputy Robert Stewart, who was waiting "just inside the parking area/driveway," asked plaintiff if he could talk with him, and plaintiff walked to "the back of the car."  Deputy Stewart then

---

[1]  Plaintiff is inexact regarding the specific dates of the alleged acts.  In the complaint, plaintiff states it was "on or about June 22/23," and in his opposition to the pending motion he states it was "approximately June 16 or 17."  This matter can be resolved through discovery.

1   placed plaintiff under arrest "for staying at the halfway house that was to[o] close to a school,"

2   although the school "could not be seen when looking up the road."

3   Plaintiff does not state, but these facts imply (defendants do not elucidate but

4   make the same inference), that he is a registered sex offender precluded from release within

5   one-quarter mile of any public or private school.  Cal. Welf.& Inst. Code § 6608.5(f).

6   Plaintiff states that he was incarcerated at the Siskiyou County Jail for a week and

7   a half, without arraignment, appointment of counsel or judgment; then transported to High Desert

8   State Prison where he stayed for another week and a half without any proceedings or appointment

9   of counsel.  Plaintiff states that he was "ultimitly [sic] later sentenced to nine months, which I

10  had reduced down to seven with half time, then deni[]ed [when] I ask[ed] for another he[a]ring

11  that took place in Siskiyou County Sheriff's Department and [went] back the seven with half."

12  The rationale for plaintiff's incarceration, though subject to reasonable inference

13  (i.e., parole violation) is not clear from the complaint or other papers.  Plaintiff remained

14  incarcerated at High Desert State Prison until his recent transfer to Solano State Prison (see

15  Notice of Change of Address filed January 30, 2008).

16  Plaintiff concludes in his complaint that "The Siskiyou County Sheriff's

17  Department elegally arested, held, and trasported me with no harainment, legal consul or court

18  order to comitt me, there by bypassing the intire judical sistem and the laws of this state for doing

19  nothing more than what I was told to do by them in the first place."  [Sic.]  The complaint seeks

20  damages of $250,000 "pluse any punitive damages the court may impose given the total

21  disrespect of the law by the vary people we trust to uphold it, and that it might send the right

22  message to the Sheriff's Department that there abuse of power and of peoples rights will not be

23  tolerated." [Sic.]

24  In an order filed August 7, 2007, this court found that plaintiff had made a prima

25  facie due process claim against the Siskiyou County Sheriff's Department and Deputy Sheriffs

26  Behr Tharsing and Robert Stewart, as alleged within a violation of plaintiff's civil rights pursuant

3

1   to 42 U.S.C. § 1983, and conspiracy to violate those rights pursuant to 42 U.S.C. § 1985 and 18

2   U.S.C. § 241.[2]  The court directed the U.S. Marshal to serve process of the amended complaint

3   upon the three defendants.  The court continues to defer consideration of plaintiff's request for

4   appointed counsel.  See Orders filed June 25, 2007 and August 7, 2007.[3]

5               Defendants now move to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6)

6   or, alternatively, for more definite statement pursuant Fed. R. Civ. P. 12(e).

7   / / /

8   / / /

9

---

10   [2]  The complaint broadly alleges six "attachments" asserting violations of:  (1) state criminal statutes (Cal. Penal Code §§ 182 (conspiracy to commit crime), 236 (false

11   imprisonment), 470 (corruption of records), 673 (cruel or unusual punishment), and 115 (false records)); (2) Sixth Amendment and Due Process rights to trial and counsel; (3) Fifth

12   Amendment and Due Process rights against Double Jeopardy; (4) falsification of U.S. government records pursuant to18 U.S.C. § 1001; (5) conspiracy laws under 18 U.S.C. § 241;

13   and (6) concealment, removal or mutilation of U.S. government records under 18 U.S.C. § 2071. This court earlier found that plaintiff's California Penal Code claims and his federal records claims are not cognizable.  See Order filed August 7, 2007.

14

15   [3]  The court stated in its August 7, 2007 order (at p. 4):

16   "28 U.S.C. § 1915(d) confers on a district court the discretion to designate counsel to represent an indigent civil litigant."  Wilborn v. Escalderon, 789 F.2d 1328,

17   1331 (9th Cir. 1986) (citation omitted).  The court may appoint counsel under section 1915(d) only under "exceptional circumstances."  Id. at 1331.  "A finding

18   of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se

19   in light of the complexity of the legal issues involved.  Neither of these factors is dispositive and both must be viewed together before reaching a decision on

20   request of counsel under section 1915(d)."  Id. (citations and internal quotations omitted); see also, Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir.1991).

21   Plaintiff appears to meet both criteria.  The straightforward facts of this case, if proven, implicate significant and complex constitutional issues, and plaintiff has

22   demonstrated only a limited capacity to articulate and pursue these matters. However, the district court's discretion under 28 U.S.C. § 1915(e)(1) is limited to

23   requesting (not appointing) counsel to represent an indigent civil litigant.  This limited authority makes the actual retention of limited available counsel both

24   problematic and tentative, and supports the more prudent approach of requesting counsel, if still deemed appropriate, only after this case has been more fully

25   developed.  The court will therefore again defer rendering a decision on plaintiff's request for appointment of counsel until defendants have filed a responsive

26   pleading.

LEGAL STANDARDS FOR MOTION TO DISMISS

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965 (2007).  "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).  The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

\\\\\

1    A pro se litigant is entitled to notice of the deficiencies in the complaint and an

2    opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

3    Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

4    DISCUSSION

5         A.  OVERVIEW

6         For the following reasons, the court concludes that, while many of plaintiff's

7    factual allegations and legal claims remain poorly defined, most have been adequately presented

8    to maintain this civil rights action at this preliminary stage.  However, it is possible that some or

9    all of plaintiff's claims, even if meritorious, may be barred by Heck v. Humphrey, 512 U.S. 477,

10   386-487, 114 S.Ct. 2364 (1994).  While defendants' motion narrows the claims presented by the

11   amended complaint, the viability of the remaining claims will need to be determined after further

12   development of the record.

13        The gravamen of the complaint is that plaintiff was "set up" by Deputies Tharsing

14   and Stewart to commit a patently illegal act and/or to violate his parole, which resulted in

15   plaintiff's arrest, detention and incarceration.  These allegations of "entrapment,"[4] generally a

16   defense to conviction, supports plaintiff's due process claim for unlawful arrest pursuant to the

17   Fourth and Fourteenth Amendments.  See, e.g., Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir.

18   1985) ("if an arrest is made in bad faith, there may be a cause of action under § 1983 as an

19   illegal, unconstitutional arrest"); U.S. v. Chisu, 312 F. Supp. 1307, 1312 (D.C. Cal. 1970)

20   ("Entrapment is indistinguishable from other law enforcement practices which the courts have

21   held to violate due process.  Entrapment is an affront to the basic concepts of justice. Where it

22   exists, law enforcement techniques become contrary to the established law of the land as an

23   impairment to due process."); Baker v. McCollan, 443 U.S. 137, 142-143, 99 S.Ct. 2689, 2694

24

25        [4]  "To establish entrapment as a matter of law, the defendant must point to undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by trickery, persuasion, or fraud of a government agent."  U.S. v. Smith, 802 F.2d

26   1119, 1124 -1125 (9th Cir. 1986) (citations omitted).

1    (1979), citing Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854 (1975) ("By virtue of its

2    'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to

3    provide a fair and reliable determination of probable cause as a condition for any significant

4    pretrial restraint of liberty.").  The validity of this claim against each of the named defendants,

5    including the county, is addressed below.

6            The facts and claims attendant to plaintiff's resulting detention in county jail and

7    incarceration in state prison are less clear.  The court remains uninformed of the legal rationale

8    for these confinements, their duration, and the process by which each was obtained.  The most

9    reasonable inference is that plaintiff's current confinement rests on the revocation of his parole,

10   rather than a new criminal prosecution.  Additionally, the initial papers filed by plaintiff suggest

11   he may have been subject to a "third strike" resulting in a longer prison sentence than would have

12   been imposed pursuant to either parole revocation or a new conviction.  Each of these scenarios

13   implicate due process rights.  Although the legal rights of parolees are, by definition, limited,[5]

14   even an arrest for parole violation must be rightfully premised, and parole revocation proceedings

15   must satisfy basic procedural and substantive due process requirements pursuant to the

16   Fourteenth Amendment.[6]  The relevance of plaintiff's additional claims pursuant to the Sixth

17

18        [5] See, e.g., Morrisey v. Brewer, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598 (1972) ("The
     essence of parole is release from prison, before the completion of sentence, on the condition that
     the prisoner abide by certain rules during the balance of the sentence."); see also, Samson v.
19   California, 547 U.S. 843, 126 S.Ct. 2193 (2006) (parole status accords diminished expectation of
     privacy).

20

21        [6] As summarized by the district court in U.S. v. Barraza, 318 F. Supp.2d 1031, 1034 (S.D.
     Cal. 2004), "[T]he Supreme Court itself has continually characterized the requirements set forth
22   in Morrisey and Scarpelli [411 U.S. 778, 93 S.Ct. 1756 (1973)] as emanating from the
     Fourteenth Amendment due process clause itself, not from the Sixth Amendment.  See Overton
23   v. Bazzetta, 539 U.S. 126, 138, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) ("It was in the
     groundbreaking decision in Morrissey v. Brewer [], in which we held that parole revocation is a
24   deprivation of liberty within the meaning of the Due Process Clause of the Fourteenth
     Amendment, that the Court rejected the view once held by some state courts that a prison inmate
25   is a mere slave."); Ponte v. Real, 471 U.S. 491, 512, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) ("
     Gagnon v. Scarpelli [] recognized a due process right to counsel under some circumstances at
26   parole and probation revocation hearings.").  Greenholtz v. Inmates of Nebraska Penal and
     Correctional Complex, 442 U.S. 1, 9, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("[R]espondents rely

1  Amendment, applicable only to criminal prosecutions,[7] and the Fifth Amendment's protections

2  against double jeopardy,[8] should be dismissed as not applicable to the gravamen of plaintiff's

3  factual allegations.

4         While not raised by defendants, it is possible that some or all of plaintiff's claims

5  may be barred by the Supreme Court's decision in Heck v. Humphrey, supra, 512 U.S. at 486-

6  487. Heck precludes a § 1983 cause of action for damages challenging a criminal conviction or

7  sentence unless the conviction or sentence has been invalidated, expunged or reversed. "[I]n

8  order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other

9  harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §

10  1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal,

11  expunged by executive order, declared invalid by a state tribunal authorized to make such

12

13  heavily on Morrissey v. Brewer [ ], where we held that a parole-revocation determination must
meet certain due process standards."); Moody v. Daggett, 429 U.S. 78, 85-86, 97 S.Ct. 274, 50

14  L.Ed.2d 236 (1976) ("In Morrissey, we held that the conditional freedom of a parolee generated
by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment

15  which may not be terminated absent appropriate due process safeguards."). See also Black v.
Romano, 471 U.S. 606, 610, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985) ("The Due Process Clause

16  of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the
conditional liberty created by probation").

17      [7] The Sixth Amendment to the U.S. Constitution provides: "In all criminal prosecutions,
the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and

18  district wherein the crime shall have been committed, which district shall have been previously
ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted

19  with the witnesses against him; to have compulsory process for obtaining witnesses in his favor,
and to have the Assistance of Counsel for his defense."

20

21      [8] "In providing that no person shall 'be subject for the same offence to be twice put in
jeopardy of life or limb,' U.S. Const., Amdt. 5, the Double Jeopardy Clause protects against two

22  distinct types of abuses. See North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072 []
(1969). It protects against being punished more than once for a single offense, or 'multiple

23  punishment.' Where a person is being subjected to more than one sentence, the Double Jeopardy
Clause ensures that he is not receiving for one offense more than the punishment authorized.

24  The Clause also protects against being prosecuted for the same offense more than once, or
successive prosecution.' 'It protects against a second prosecution for the same offense after

25  acquittal. It protects against a second prosecution for the same offense after conviction.' Ibid.
(footnotes omitted). The Clause functions in different ways in the two contexts, and the analysis

26  applied to claims of successive prosecution differs from that employed to analyze claims of
multiple punishment." U.S. v. Dixon, 509 U.S. 688, 744, 113 S.Ct. 2849, 2881 (1993).

1  determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28

2  U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that

3  has not been so invalidated is not cognizable under § 1983."  Id. (fn. omitted).  Significantly,

4  Heck applies to challenges to confinement resulting from parole revocation.  See, e.g., Wilson v.

5  City of Fountain Valley, 372 F.Supp.2d 1178, 1195 (C.D.Cal.2004), citing plurality opinion in

6  Spencer v. Kemna, 523 U.S. 1, 19, 118 S.Ct. 978 (1998) for "assuming, without expressly

7  deciding, that Heck applies to parole revocations;" see also, Littles v. Board of Pardons and

8  Paroles Division, 68 F.3d 122, 123 (5th Cir.1995); White v. Gittens, 121 F.3d 803, 805 (1st

9  Cir.1997); Schafer v. Moore, 46 F.3d 43 (8th Cir.1995); Crow v. Penry, 102 F.3d 1086, 1087

10  (10th Cir.1996).  The applicability of Heck remains to be determined.

11        Consequently, it is clear this case requires further development to determine

12  pertinent facts and ascertain the precise contours of plaintiff's claims.  The court has concluded it

13  would be unhelpful to task plaintiff with further amendment of the complaint at this point, given

14  his borderline literacy and restricted access to documents and resources due to incarceration.  The

15  present motion narrows the amended complaint, and unresolved matters will crystallize and be

16  resolved by the court as they arise or are presented by appropriate motion.

17        B.  CLAIMS PURSUANT TO 42 U.S.C. § 1983

18        Section 1983 provides in pertinent part that "Every person who, under color of

19  any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

20  Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

21  within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

22  by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity,

23  or other proper proceeding for redress."  "Section 1983 does not create any substantive rights;

24  rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials.  To

25  prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred

26  "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or

9

1  federal statutory right.  Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908 [] (1981), overruled

2  on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662 [] (1986)."  Jones v.

3  Williams, 297 F.3d 930, 934 (9th Cir. 2002).

4          "In order for a person acting under color of state law to be liable under section

5  1983 there must be a showing of personal participation in the alleged rights deprivation:  there is

6  no respondeat superior liability under section 1983.  See Monell v. Dep't of Soc. Servs., 436 U.S.

7  658, 98 S.Ct. 2018 [] (1978) (rejecting the concept of respondeat superior liability in the section

8  1983 context and requiring individual liability for the constitutional violation); Taylor v. List,

9  880 F.2d 1040, 1045 (9th Cir.1989) (requiring personal participation in the alleged constitutional

10  violations); May v. Enomoto, 633 F.2d 164, 167 (9th Cir.1980) (holding that section 1983

11  liability must be based on the personal involvement of the defendant)."  Jones, 297 F.3d at 934.

12          1.  Eleventh Amendment Immunity (Official Capacity Defendants)

13          Defendants contend they are "state actors" entitled to Eleventh Amendment

14  immunity because tasked with enforcing state law, including the investigation of sex offenses,

15  an allusion to plaintiff's arrest.  Defendants rely on the California Supreme Court's decision in

16  Venegas v. County of Los Angeles, 32 Cal. 4th 820, 839 (2004), which held that California

17  sheriffs, their departments and deputies, act on behalf of the state when performing state law

18  enforcement duties and are therefore protected by Eleventh Amendment immunity.

19          The Eleventh Amendment to the U.S. Constitution provides:  "The Judicial power

20  of the United States shall not be construed to extend to any suit in law or equity, commenced or

21  prosecuted against one of the United States by Citizens of another State, or by Citizens or

22  Subjects of any Foreign State."  The Eleventh Amendment bars suits against a state for damages

23  or injunctive relief, unless the state has consented to or waived immunity, or Congress has

24  validly abrogated the same.  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54-55, 116 S.Ct.

25  1114 (1996).

26  \\\\\

1    States and state officers sued in their official capacity are not considered persons

2 under section 1983 because immune from liability under the Eleventh Amendment and doctrine

3 of sovereign immunity.  Howlett v. Rose , 496 U.S. 356, 365, 110 S.Ct. 2430 (1990); Will v.

4 Michigan Dept. of State Police, 491 U.S. 58, 63-67, 71, 109 S.Ct. 2304 (1989).  In contrast, the

5 U.S. Supreme Court has held that local governmental entities, e.g., cities, counties, and local

6 officers sued in their official capacity, are "persons" for purposes of section 1983, rendering them

7 directly liable for constitutional violations if carried out pursuant to local policies or customs.

8 McMillian v. Monroe County, 520 U.S. 781, 784-785, 117 S.Ct. 1734 (1997); Monell v. New

9 York City Dept. of Social Services, 436 U.S. 658, 690-692, 98 S.Ct. 2018 (1978).

10    Notwithstanding their reliance on Venegas, defendants acknowledge the Ninth

11 Circuit earlier reached the opposite conclusion in Brewster v. Shasta County, 275 F.3d 803 (9th

12 Cir. 2001), which held that California sheriffs, their departments and deputies, act on behalf of

13 the county when investigating crimes and enforcing state criminal statutes.  See Brewster, citing

14 Cal. Govt. Code §§ 25303 and 31000.1 (county board of supervisors has supervisory duty over

15 county sheriff's department); Cal. Gov. Code § 815.2 (monetary damages for § 1983 claims are

16 paid by the county); Cal. Govt. Code § 26603 [now § 69922] (sheriff required to attend to all

17 superior courts within his county); Cal. Const. art. XI, § 1(b)) (California Constitution identifies

18 sheriff as county officer); accord, Cortez v. County of Los Angeles, 294 F.3d 1186, 1190 (9th

19 Cir.2002) (California sheriff acts on behalf of county in the oversight and management of county

20 jails).

21    Defendants' argument that Venegas should control because decided *after*

22 Brewster is without merit.  Although the Ninth Circuit has not revisited this matter since

23 Venegas, it is clear that federal claims must be ruled by federal law, i.e., that Brewster must

24 control in this federal § 1983 action, thus rendering the Siskiyou County Sheriff's Department,

25 its Sheriff and deputies, county actors without Eleventh Amendment immunity.  Accord, e.g.,

26 Brockmeier v. Solano County Sheriff's Department, 2006 WL 3760276 (E.D. Cal. 2006);

1   Faulkner v. County of Kern, 2006 WL 1795107 (E.D.Cal. 2006); Garcia v. City of Merced,, 2008

2   WL 114201 (E.D. Cal. 2008); see also Meyers v. Pope, 2006 WL 1867656 (E.D. Cal. 2006)

3   (county sheriff, supervised by county of board of supervisors, acts on behalf of county in

4   management and oversight of county jails, citing Brewster, supra, 275 F.3d at 808, and Cortez,

5   supra, 294 F.3d at 1190, 1191).

6           Accordingly, defendants will be considered county actors for purposes of this

7   action, or "persons" under section 1983, without recourse to Eleventh Amendment immunity.

8                   2.  Siskiyou County Sheriff's Department

9           Plaintiff's claims against the Siskiyou County Sheriff's Department are in reality

10  made against Siskiyou County.  See, e.g., Brandon v. Holt, 469 U.S. 464, 472, 105 S.Ct. 873

11  (1985) (a department within a local government has "no greater separate identity" than the local

12  government).  Accordingly, it is not material that plaintiff has failed to name Siskiyou County per

13  se.  Nor is it material that plaintiff has failed to name the Siskiyou County Sheriff in his official

14  capacity.  See, e.g., Brandon, 469 U.S. at 472 (suit against department head in his official

15  capacity is a suit against the local government entity); Monell, 436 U.S. at 691, n. 55 ("local

16  government officials sued in their official capacities are 'persons' under § 1983 in those cases in

17  which . . . a local government would be suable in its own name"); see also, Kentucky v. Graham,

18  473 U.S. 159, 167, n. 14, 105 S.Ct. 3099 (1985) ("There is no longer a need to bring

19  official-capacity actions against local government officials, for under Monell, supra, local

20  government units can be sued directly for damages and injunctive or declaratory relief ").

21          Defendants argue that plaintiff has failed to make a claim against Siskiyou County

22  Sheriff's Department because he has not identified any official policy or custom, express or

23  implied, that would support the purportedly illegal actions of defendants Tharsing and Stewart in

24  effecting plaintiff's arrest, detention and subsequent incarceration.

25          "[A] municipality cannot be held liable under § 1983 on a respondeat superior

26  theory."  Monell, 436 U.S. at 691.  "[A] municipality can be found liable under § 1983 only

                                        12

1    where the municipality *itself* causes the constitutional violation at issue.  Respondeat superior or

2    vicarious liability will not attach under § 1983."  Collins v. City of Harker Heights, 503 U.S. 115,

3    123, 112 S.Ct. 1061 (1992) (original emphasis), citing Monell, 436 U.S. at 694-695.  Thus, "a

4    local government may not be sued under § 1983 for an injury inflicted solely by its employees or

5    agents.  Instead, it is when execution of a government's policy or custom, whether made by its

6    lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

7    the injury that the government as an entity is responsible under § 1983."  Monell, at 694.  A local

8    governmental entity may also "be liable if it had a policy or custom of failing to train its

9    employees and that failure to train caused the constitutional violation.  In particular . . . the

10    inadequate training of police officers could be characterized as the cause of the constitutional tort

11    If – and only if – the failure to train amounted to 'deliberate indifference' to the rights of persons

12    with whom the police come into contact."  Collins, 503 U.S. at 123-124 (fn. omitted), citing in

13    Canton v. Harris, 489 U.S. 378, 387, 388, 109 S.Ct. 1197 (1989).

14         "[L]ocal governments, like any other § 1983 'person,' . . . may be sued for

15    constitutional deprivations visited pursuant to governmental 'custom' even though such a custom

16    has not received formal approval through the body's official decisionmaking channels."  Monell,

17    436 U.S. at 690-91.  "[P]laintiff must allege that the action inflicting injury flowed from either an

18    explicitly adopted or a tacitly authorized city policy.  Ibid.; Harris v. City of Roseburg, 664 F.2d

19    1121, 1130, 1338 (9th Cir.1981) ("'Official policy' within the meaning of Monell [encompasses

20    situations] where a municipality 'impliedly or tacitly authorized, approved, or encouraged' illegal

21    conduct by its police officers."') (quoting Turpin v. Mailet, 619 F.2d 196, 201 (2nd Cir.), cert.

22    denied, 449 U.S. 1016, 101 S.Ct. 577 (1980))."  Gibson v. U.S., 781 F.2d 1334, 1337-1338 (9th

23    Cir. 1986); see also, Ortez v. Washington Cty., 88 F.3d 804, 811 (9th Cir. 1996).  "Proof of a

24    single incident of unconstitutional activity is not sufficient to impose liability under Monell,

25    unless proof of the incident includes proof that it was caused by an existing, unconstitutional

26    municipal policy, which policy can be attributed to a municipal policymaker.  Otherwise the

1   existence of the unconstitutional policy, and its origin, must be separately proved.  But where the

2   policy relied upon is not itself unconstitutional, considerably more proof than the single incident

3   will be necessary in every case to establish both the requisite fault on the part of the municipality,

4   and the causal connection between the 'policy' and the constitutional deprivation." City of

5   Oklahoma City v. Tuttle, 471 U.S. 808, 823-824, 105 S.Ct. 2427, 2436 (1985).

6          Accordingly, "'our first inquiry in any case alleging municipal liability under §

7   1983 is the question whether there is a direct causal link between a municipal policy or custom

8   and the alleged constitutional deprivation.'" Collins, 503 U.S. at 123, quoting in Canton, 489

9   U.S. at 385.

10          It is implicit in plaintiff's claims that Deputy Tharsing's instructions to plaintiff,

11   coupled with Deputy Stewart's arrest of plaintiff, reflect an intentional "set up" on the part of one

12   or both of the Deputies that demonstrated rogue conduct that may or may not be attributable to

13   lack of appropriate training by the Sheriff's Department ,or the deputies' adherence to

14   departmental policy or practice, however tacit.  Both scenarios present the possibility of a "direct

15   causal link" between municipal policy or custom (whether explicitly adopted or tacitly

16   authorized) and plaintiff's arrest.  It is therefore reasonable to assume a "direct causal link"

17   between Sheriff's Department custom or policy and plaintiff's detention in county jail.  While

18   such a link becomes more attenuated with plaintiff's transfer to, and incarceration, in state

19   prison, it can, for present purposes, be inferred based on a "chain of events" theory.  See, e.g.,

20   Lucero v. Donovan, 354 F.2d 16, 20 (9th Cir. 1965) (if plaintiff's arrest was unlawful, "liability

21   could follow . . . for the entire chain of events which, in continuous and unbroken sequence,

22   followed [the] unlawful act"); see also, Edgerly v. City and County of San Francisco, 495 F.3d

23   645, 656, n. 16 (9th Cir. 2007).

24          Accordingly, for present purposes, the court finds that plaintiff's allegations

25   against the Siskiyou County Sheriff's Department are adequate to support his § 1983 claim for

26   unlawful arrest pursuant to the Fourth and Fourteenth Amendments.  Lujan, supra, 504 U.S. at

1   561 (presume general allegations embrace necessary supporting facts); Twombly, supra, 127

2   S.Ct. at 1965 (factual allegations sufficient to demonstrate more than a speculative right of

3   action).

4                       3.  Deputies Tharsing and Stewart

5              Plaintiff does not allege whether he is suing defendants Tharsing and Stewart in

6   their official or personal capacities, or both.  The distinction is important because the deputies

7   may assert a qualified immunity defense[9] only if sued in their personal capacities (see, Kentucky

8   v. Graham, 473 U.S. at 166-167, Hallstrom v. City of Garden City, 991 F.2d 1473, 1482-1483

9   (9th Cir. 1993)), and plaintiff may pursue punitive damages against the deputies only in their

10  personal capacities, Hallstrom, 991 F.3d at 1486, n. 30 and related text, citing City of Newport v.

11  Fact Concerts, Inc., 453 U.S. 247, 2101 S.Ct. 2748 (1981).

12             The Ninth Circuit does not require allegations of defendants' capacities in the

13  pleadings.  "It is not necessary to aver the capacity of a party to sue or be sued or the authority of

14  a party to sue or be sued in a representative capacity or the legal existence of an organized

15  association of persons that is made a party, except to the extent required to show the jurisdiction

16  of the court."  Fed. R. Civ. P. 9(a).  See, e.g., Price v. Akaka, 928 F.2d 824 (9th Cir. 1990) (court

17  may construe capacity in which individual is sued on the basis of the claims asserted and nature

18  of relief sought) (citation and internal quotations omitted); see also Kentucky v. Graham, 437

19  U.S. at 167, n. 14 ("In many cases, the complaint will not clearly specify whether officials are

20  ─────────────────────

21        [9]  "The defense of qualified immunity . . . shields an officer from trial when the officer
     reasonably misapprehends the law governing the circumstances she confronted, even if the
22   officer's conduct was constitutionally deficient. . . .The threshold inquiry requires a court to ask,
     taken in the light most favorable to the party asserting the injury, do the facts alleged show the
23   officer's conduct violated a constitutional right? The inquiry ends at this stage if no constitutional
     right is found to have been violated; the plaintiff cannot prevail.  If, on the other hand, the
24   plaintiff's allegations do make out a constitutional injury, then the court must determine whether
     that constitutional right was clearly established at the time of the violation. If the right was not
25   clearly established, the qualified immunity doctrine shields the officer from further litigation.
     Finally, even if the violated right was clearly established . . .if the officer's mistake as to what the
26   law requires is reasonable, the officer is entitled to the immunity defense."  Motley v. Parks, 432
     F.3d 1072, 1077 (9th Cir. 2005) (citations and internal quotations omitted).

1  sued personally, in their official capacity, or both. 'The course of proceedings' in such cases

2  typically will indicate the nature of the liability sought to be imposed." (Citation omitted)) .

3       Although "damage actions brought under 42 U.S.C. § 1983 are generally viewed

4  as suits against the individual" (Blaylock v. Schwinden, 862 F.2d 1352, 1354 (9th Cir. 1988)),

5  plaintiff's claims leave open the allegation that the challenged actions were officially sanctioned.

6  Suits against officials in their official capacity are treated as suits against the governmental entity.

7  Kentucky v. Graham, supra, 473 U.S. at 165-166.

8       Accordingly, the court will construe plaintiff's complaint as naming defendants

9  Tharsing and Stewart in both their personal and official capacities.

10       Whether the deputies' alleged conduct was officially sanctioned or the product of

11  inadequate training are mixed questions of fact and law that will be clarified as this case

12  progresses.  For present purposes, the court finds that the allegations of plaintiff's complaint

13  support a sufficiently direct link between both deputies and plaintiff's arrest to sustain plaintiff's

14  unlawful arrest claim against each of them.

15       Less clear is the deputies' responsibility, if any, for plaintiff's resulting detention,

16  transfer to state prison, and ongoing incarceration.  However, the "chain of events" theory of

17  legal liability that supports maintenance of all plaintiff's § 1983 claims against the county based

18  on unlawful arrest also supports maintenance of these claims against the deputies pending further

19  development of the record.  If the arrest was unlawful, the liable deputy or deputies would also

20  be responsible for "the entire chain of events which, in continuous and unbroken sequence,

21  followed .. ."  Lucero, 354 F.2d at 20.

22       4.  Punitive Damages

23       Punitive damages are not recoverable from Siskiyou County or the individual

24  defendants in their official capacities.  See City of Newport, supra, 453 U.S. at 271 (punitive

25  damages are not available in § 1983 actions against government entities).  Plaintiff may pursue

26  his punitive damages claim only against the deputies in their individual capacity.  Kentucky v.

16

1  Graham, 473 U.S. at 167, n. 13, citing Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625 (1983).

2  Plaintiff's compensatory damages claim may proceed against all named defendants.

3        Accordingly, plaintiff's punitive damages claim should be dismissed against

4  Siskiyou County and Deputies Tharsing and Stewart in their official capacities; however, the

5  claim may proceed against Deputies Tharsing and Stewart in their individual capacities.

6        C.  CONSPIRACY CLAIMS PURSUANT TO 18 U.S.C. § 241 AND 42 U.S.C. § 1985

7        Plaintiff may not pursue his conspiracy claims pursuant to 18 U.S.C. § 241

8  because it is a criminal statute that does not accord a private right of action.  See Peabody v.

9  United States, 394 F.2d 175, 177 (9th Cir.1968).  Accordingly, plaintiff's § 241 claim should be

10  dismissed.

11        Section 1985 proscribes conspiracies to interfere with civil rights.  Sanchez v.

12  City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990); Karim-Panahi v. Los Angeles Police

13  Dept., 839 F.2d 621, 626 (9th Cir. 1988).  As construed by the United States Supreme Court, it

14  protects only against discrimination founded upon invidious, class-based animus, such as race.

15  United Bhd. of Carpenters and Joiners Local v. Scott, 463 U.S. 825, 103 S. Ct. 3352 (1983); see

16  Ramirez v. City of Reno, 925 F. Supp. 681, 689 (D.Nev. 1996); see also, De La Vruz v. Tormey,

17  582 F.2d 45, 49-50 (9th Cir. 1978) (invidious discrimination improperly distinquishes among

18  persons by reference to criteria such as race, sex, religion or ancestry).

19        Plaintiff asserts he was discriminated against because he was a parolee or "ex-

20  con."  Reply, at 4.  Absent an allegation that the challenged actions were based on class-based

21  animus, plaintiff's federal conspiracy claim must fail.  See Griffin v. Breckenridge, 403 U.S. 88,

22  102 (1971).  Accordingly, plaintiff's § 1985 conspiracy claim should also be dismissed.

23        D.  MOTION FOR MORE DEFINITE STATEMENT

24        Defendants move, alternatively to their motion to dismiss, for an order requiring

25  more definite statement pursuant Fed. R. Civ. P. 12(e).  Rule 12(e) provides in pertinent part: "A

26  party may move for a more definite statement of a pleading to which a responsive pleading is

1    allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.

2    The motion must be made before filing a responsive pleading and must point out the defects

3    complained of and the details desired."  If the motion is granted, and the court's order for more

4    definite statement is not timely complied with, "the court may strike the pleading or issue any

5    other appropriate order."  Id.

6         Although plaintiff's amended complaint is concededly imprecise, leaving much for

7    further development, it satisfies the requirements of federal notice pleading.  As the Ninth Circuit

8    found in <u>Bautista v. Los Angeles County</u>, 216 F.3d 837, 843 (9th Cir. 2000) (Reinhardt, J.,

9    conc.):  "True, the complaint states the relevant facts at a high level of generality.  But that is the

10   point of notice pleading:  a plaintiff need only provide the bare outlines of his claim.  As one

11   authoritative treatise has summarized the matter, "except when specific pleading is required . . .,

12   evidentiary facts need not be set forth in the complaint: '(F)ederal courts and litigants must rely

13   on summary judgment and control of discovery to weed out unmeritorious claims.' " 2 William

14   W. Schwarzer et al., Federal Civil Procedure Before Trial ¶ 8:16, at 8-4 (2000) (quoting

15   <u>Leatherman [v. Tarrant Co. Narcotics Intelligence & Coordination Unit</u>], 507 U.S. [163], 168-

16   169, [113 S.Ct. 1160 (1993)])."

17        Accordingly, the court will deny defendants' alternate motion for more definite

18   statement.

19   E.  <u>PLAINTIFF'S REQUESTS</u>

20        In a "Motion for Release of Current Court Findings and Judgments Now Under

21   Littagation Along with Any Abstract of Judgement Commitment Orders Held by This Court"

22   [sic], filed January 4, 2008, plaintiff asks the court to assist him in "updating" his case "as to

23   were I now stand in the Judicalary System and is in no way ment to obstruct or releasse any

24   ongoing littigation" [sic].  Plaintiff repeats this request in his "Closing memorandum with

25   Request for Amendment and Verdict," filed March 11, 2008.  Because the instant Findings and

26   Recommendations provide an adequate overview and current appraisal of the case, subject to the

18

District Judge's review, the court finds plaintiff's requests duplicative and will therefore deny

them without prejudice subject to further development of the record.

CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants'

motion to dismiss (#13 & #16) be granted in part and denied in part, as follows:

1.  The Siskiyou County Sheriff's Department should remain a named defendant;

2.  Deputy Sheriffs Bahr Tharsing and Robert Stewart should remain named defendants,

both in their personal and official capacities;

3.  Plaintiff's § 1983 claim for unlawful arrest pursuant to the Fourth and Fourteenth

Amendments should proceed;

4.  Plaintiff's 1983 claims pursuant to the Fifth (Double Jeopardy) and Sixth

Amendments be dismissed;

5.  Plaintiff's punitive damages claim pursuant to § 1983 should be dismissed as to the

County only; the claim should proceed against Deputies Tharsing and Stewart in their personal

capacities;

6.  Plaintiff's compensatory damages claim pursuant to § 1983 should proceed against all

defendants; and

7.  Plaintiff's conspiracy claims pursuant to 18 U.S.C. § 241 and 42 U.S.C. § 1985 should

be dismissed;

In addition, IT IS HEREBY ORDERED that:

1.  Defendants' motion for more definite statement (#13 & #16) is denied; and

2.  Plaintiff's requests for documents (#23 & #27) are denied.

These findings and recommendations are submitted to the United States District

Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

after being served with these findings and recommendations, plaintiff may file written objections

with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

1   and Recommendations."  Plaintiff is advised that failure to file objections within the specified

2   time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153

3   (9th Cir. 1991).

4   DATED: 03/12/08                                    /s/ Gregory G. Hollows

5                                                      _____
                                                       GREGORY G. HOLLOWS
6                                                      UNITED STATES MAGISTRATE JUDGE

7

8   GGH5: Armstrong.1046.f&r

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26