```
IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA
```

| | | |
|---|---|---|
| JERRY ARMSTRONG, | ) | |
| | ) | |
| Plaintiff, | ) | 2:07-cv-1046-GEB-GGH |
| | ) | |
| v. | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| SISKIYOU COUNTY SHERIFF'S | ) | AND DISMISSING THIRD PARTY |
| DEPARTMENT, BEHR THARSING, | ) | PLAINTIFFS' COMPLAINT |
| ROBERT STEWART, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| SISKIYOU COUNTY SHERIFF'S | ) | |
| DEPARTMENT, BEHR THARSING, | ) | |
| ROBERT STEWART, | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALFRED BEARDEN, | ) | |
| | ) | |
| Third Party Defendant. | ) | |
| _____ | ) | |

Two motions are pending: the third party Defendant filed a motion to dismiss the third party Plaintiffs' complaint on June 25, 2009, and Defendants filed a motion for summary judgment on Plaintiff's remaining claims on August 27, 2009.  Defendants' summary judgment motion will be addressed first.

Plaintiff's remaining claims have been construed by the Court as claims under 42 U.S.C. § 1983 for unlawful seizure in violation of the Fourth Amendment.  (Finding and Recommendations, Docket No. 28 ("F & R"), 19:11-12; Order, Docket No. 33 ("Order"),

1

2:11-12.)  The claims are contained in the complaint Plaintiff filed when he was proceeding without counsel, and were construed by the Court before Plaintiff was appointed counsel.  Plaintiff was appointed counsel on July 17, 2008.

Plaintiff's claims are unclear.  During the hearing on the motion, Plaintiff's attorney was asked to clarify the claims he alleges against two movant Siskiyou County Police Officers, Behr Tharsing and Robert Stewart, both sued in their personal and official capacities.  Plaintiff's counsel indicated in response that Stewart wrongfully arrested Plaintiff for staying at the halfway house at which Tharsing directed him to stay.  Plaintiff's counsel also indicated that Tharsing and Stewart conspired to have Plaintiff stay at that halfway house so that Stewart would have a basis for arresting him for violation of his parole condition which prohibited him from being "within 100 yards of the perimeter of places where children congregate (schools, parks, playgrounds, video arcades, swimming pools, etc.) without prior . . . approval." (Statement of Undisputed Facts "SUF" ¶ 21).  Plaintiff's conspiracy claim was previously dismissed, and Plaintiff's conclusory assertions are insufficient to support a conspiracy claim.

The evidence reveals that Plaintiff's parole officer issued a directive to the Siskiyou County Sheriff's Office to arrest Plaintiff for a parole violation, following which Officer Stewart arrested Plaintiff.  This arrest directive issued because Plaintiff stayed overnight in Yreka California instead of at a residence in Edgewood California, where his parole officer thought he would stay.  After Stewart arrested Plaintiff, Plaintiff's parole officer interviewed Plaintiff in the Siskiyou County jail, and eventually

caused Plaintiff's parole to be violated for two charges: "failure to follow instructions to stay at Bill Davis' residence" in Edgewood, California; and "violation of a special condition of parole [that he not] be near a school or park where children were." (SUF ¶¶ 79 and 79.) "On June 8, 2006, plaintiff signed a Parolee-Attorney Decision Form stating that he accepted the return to custody order and unconditionally gave up his rights to contest the charges against him." (SUF ¶ 95).

Plaintiff blames Stewart and Tharsing for the parole violations that resulted in his return to prison. Plaintiff first spoke to Officer Tharsing at the Siskiyou County Sheriff's Office on May 22, 2006. Plaintiff had been released from state prison the previous day, May 21, 2006, after serving approximately ten and a half years for violating California Penal Code section 288.5, a statute proscribing continuous sexual abuse of a child. (SUF ¶¶ 2 and 6.) As a result of this conviction, "Plaintiff was ordered to register as a sex offender pursuant to [California] Penal Code § 290." (SUF ¶ 4.)

Following Plaintiff's release from prison, he traveled to Siskiyou County, California and spent the night of May 21 at the home of Bill Davis in Edgewood, California. (SUF ¶¶ 13, 14.) On May 22, 2006, Plaintiff and Bill Davis traveled to Weed, California so Plaintiff could meet with his parole officer, Alfred Bearden. (SUF ¶ 17.) At that meeting, Bearden went over Plaintiff's parole conditions. (SUF ¶ 18.) One parole condition stated: "You may not be within 100 yards of the perimeter of places where children congregate (schools, parks, playgrounds, video arcades, swimming pools, etc.) without prior . . . approval." (SUF ¶ 21.) Plaintiff

was aware of this condition, and signed a copy of his parole conditions. (SUF ¶¶ 19, 22.)  Bearden also told Plaintiff not to stay in the Lane Street Halfway House.  (Armstrong Dep. 19:12-20:13.) After this meeting, Plaintiff "started to panic cause [he] didn't know where [he] was gonna stay or what [he] was gonna do." (Armstrong Dep. 22:13-15.)

Plaintiff then had Bill Davis drive him to the Siskiyou County Sheriff's Office in Yreka, California.  (SUF ¶¶ 26-28; Armstrong Dep. 22:25-23:9.)  There, Plaintiff told the records clerk, Margie Loher, he had no place to stay.  (SUF ¶¶ 28, 32.)  Margie Loher then asked Officer Tharsing to talk to Plaintiff.  (SUF ¶ 32; Tharsing Dep. 6:17-19.)  Plaintiff told Officer Tharsing he had no place to stay and asked if he could get the terms of his parole changed.  (SUF ¶¶ 40-41.)  Officer Tharsing told Plaintiff "the Sheriff's Office could not change the terms of his parole," and suggested that Plaintiff stay at the Lane Street Halfway House (SUF ¶¶ 42, 44).  Plaintiff gave deposition testimony that "it was [his] understanding that [Officer Tharsing did not then place Plaintiff] under a direct order," to stay at the Lane Street Halfway House, and that what Officer Tharsing said was "more of a suggestion that [he] stay at the halfway house."  (Armstrong Dep. 25:10-11, 26:6-7, 75:4-9).  The Lane Street Halfway House is about three addresses away from the Sheriff's Office.  (Tharsing Dep. 16:12-14.)  Plaintiff did not inform Officer Tharsing that it was a violation of his parole to be within 100 yards of a school.  (Armstrong Dep. 26:1-5).  Nor did Plaintiff inform Officer Tharsing that Parole Officer Bearden had prohibited him from staying at the Lane Street Halfway House.  (SUF ¶ 47.)  "At the time [Officer Tharsing spoke to Plaintiff, Officer]

4

1  Robert Stewart was standing behind and off to the side of Behr
2  Tharsing and could hear the conversation between plaintiff and Behr
3  Tharsing."  (SUF ¶ 37.)
4      Plaintiff then began walking toward the Lane Street Halfway
5  House.  (SUF § 50.)  Plaintiff's deposition testimony reveals it
6  never crossed his mind that this halfway house was the same halfway
7  house he had discussed earlier with Parole Officer Bearden.
8  (Armstrong Dep. 26:13.)  When Plaintiff was "about halfway" to what
9  he believed was the halfway house that Officer Tharsing suggested,
10 Plaintiff became depressed and started to panic.  (Armstrong Dep.
11 27:4-12.)  He stopped walking, leaned up against a wall to figure out
12 what he was going to do, and "stuffed his parole papers down a drain
13 gate."  (SUF ¶ 50; Armstrong Dep. 27:4-24.)  Plaintiff then began
14 walking in the opposite direction "toward town" with the intention of
15 getting some food and to locate a place to stay.  (SUF ¶ 50;
16 Armstrong Dep. 29:22-23, 30:14-23.)  His "mind wasn't 100 percent all
17 together."  (SUF ¶ 51; Armstrong Dep. 30:9-10.)
18      Plaintiff gave deposition testimony that while he
19 was walking through a Payless shoe store parking lot, about three or
20 four blocks from the Sheriff's Office, Officer Tharsing and another
21 unidentified police officer each drove a police car into the Payless
22 shoe store parking lot (SUF ¶ 52; Armstrong Dep. 31:6-13, 15-25).
23 Officer Tharsing then called Plaintiff over to his car.  (Armstrong
24 Dep. 31:17-18.)  Plaintiff's deposition testimony contains the
25 following question and answer about this contact: "Q: And at that
26 point did he tell you to stay at the halfway house? A: Yes, he did."
27 (Armstrong Dep. 75:18-23.)  However, Plaintiff does not remember
28 Officer Tharsing's exact words.  (Armstrong Dep. 32:15, 34:11-12.)

1  Plaintiff further testified that Officer Tharsing "left no doubt that
2  he would" arrest Plaintiff if he did not stay at the halfway house,
3  but Officer Tharsing never threatened him with arrest. (Armstrong
4  Dep. 76:8-25).
5      Officer Tharsing gave deposition testimony that in the
6  Payless store parking lot Plaintiff was attempting to get the other
7  officer to change the terms of his parole.  (Tharsing Dep. 15:2-24,
8  16:1-4.)  Officer Tharsing testified during the conversation he had
9  with Plaintiff in the parking lot, he "re-explained" to Plaintiff
10 that the police could not change the terms of his parole, and that
11 Plaintiff needed to contact his parole officer.  (Tharsing Dep. 15:2-
12 7.)
13     After this communication with Officer Tharsing, Plaintiff
14 walked to the Lane Street Halfway House and spent the night there.
15 (SUF ¶ 59.)  Plaintiff did not tell anyone at the Lane Street Halfway
16 House that he could not stay near a school because he was a convicted
17 sex offender.  (SUF ¶ 60.)  After Plaintiff arrived at the Lane
18 Street Halfway House, someone pointed out a nearby school to him.
19 (Armstrong Dep. 37:16-17.)  Plaintiff saw the school, but did not ask
20 anyone how far away the school was because he "was embarrassed by the
21 whole events" and "pretty much kept [his] mouth shut."  (Armstrong
22 Dep. 37:18-19, 38:9-17.)
23     On the morning of May 23, 2006, Alfred Bearden arrived at
24 Bill Davis's residence looking for Plaintiff. (Bearden Dep. 23:8-
25 13.)  The person who answered the door at that residence told Bearden
26 Plaintiff was not there, and that Plaintiff had spent the night in
27 Yreka.  (Bearden Dep. 23:17-23.)  Bearden then called the Siskiyou
28 County Sheriff's Department, telling the Department to "be on the

look out" for Plaintiff and to take Plaintiff into custody for failing to follow his instructions. (Bearden Dep. 24:4-10, 25:16-22.) Bearden then "prepared a No Bail Detainer under [California] Penal Code § 3056 which authorized the taking of plaintiff into custody." (SUF ¶ 64; Ex. M.) Subsequently, Captain Betts of the Siskiyou County Sheriff's Department notified Officer Stewart through dispatch that Plaintiff had a parole violation "and instructed him to take plaintiff into custody if he saw him." (SUF ¶ 66; Stewart Dep. 10:2-22.) After receiving this dispatch information, Officer Stewart left the Sheriff's Office and saw Plaintiff walking down the street towards him. (SUF ¶ 69; Stewart Dep. 11:7-9.) Plaintiff testified that Officer Stewart told him after Officer Stewart contacted him that he "was under arrest for staying at the halfway house." (Armstrong Dep. 39:10-11.) Officer Stewart gave deposition testimony that he told Plaintiff he was arresting him for a parole violation. (Stewart Dep. 11:17-19.) Plaintiff objects to this testimony, arguing that Officer Stewart's stated reason for the arrest was that Plaintiff had stayed at the halfway house. Plaintiff's objection is overruled since neither Plaintiff's testimony nor any other evidence controverts Officer Stewart's direct evidence that he also told Plaintiff he was arresting him for a parole violation.

## ANALYSIS

### A. Plaintiff's claim against Officer Tharsing in his personal capacity

Officer Tharsing argues he has not violated Plaintiff's Fourth Amendment right against unreasonable seizure, and that even if he did violate that right he is immune from liability for Plaintiff's claims under the federal qualified immunity doctrine.

1  |  Qualified immunity protects government officials from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. We consider qualified immunity using [a] two-step inquiry[:] First, we decide whether the alleged facts make out a violation of a constitutional right. If so, we then decide whether the right at issue was 'clearly established' at the time of the alleged misconduct. The inquiry into whether a right is clearly established must be undertaken in light of the specific context of the case. In addition, for a right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

Cousins v. Lockyer, 568 F.3d 1063, 1069 (9th Cir. 2009)(internal citations, brackets, and quotations omitted).

Plaintiff indicates he has a broad Fourth Amendment right to be free from being placed in a halfway house for an overnight stay there. Even assuming arguendo that Officer Tharsing violated this right when he directed Plaintiff to stay overnight at the halfway house, the undisputed facts reveal that the contours of this right were not sufficiently clear so that a reasonable official in Officer Tharsing's situation would have understood that directing Plaintiff to stay overnight at the Lane Street Halfway House would violate Plaintiff's Fourth Amendment right against unreasonable seizure under the circumstances in which Tharsing gave Plaintiff that direction. "At no time did plaintiff tell . . . Tharsing that Alfred Bearden had told him that he couldn't stay at the Lane Street Half-way House." (SUF ¶ 47.) Officer Tharsing's deposition testimony reveals he knew Plaintiff was on parole for a sex offense involving a child, but the evidence does not show he understood Plaintiff was not suppose to stay overnight at the Lane Street Half-way House because the proximity of that halfway house to a school.

1          Further, when Officer Tharsing had communications with
2   Plaintiff at the Payless shoe store parking lot, Plaintiff continued
3   to evidence confusion about what he needed to do to try to get his
4   parole conditions changed, and "was walking the wrong direction [if
5   his destination was] the Lane Street Half-way House."  (SUF ¶ 56.)
6   Therefore, Tharsing prevails on his qualified immunity defense.

**B.   Plaintiff's against Officer Stewart in his personal capacity**

8          Officer Stewart seeks summary judgment on Plaintiff's
9   personal capacity claim against him, in which Plaintiff alleges that
10  Officer Stewart "unlawfully arrested [Plaintiff] without legal grounds
11  to do so and conspired to put him back into custody."  (Plt.'s Opp'n
12  7:19-20.)  Plaintiff argues that "[e]ven if [Stewart's] arrest [of
13  him] was at the behest of the parole officer, it does not refute [his]
14  claim that he was set up for arrest by [Officers Stewart and
15  Tharsing]."  (Plt.'s Opp'n 9:17-19.)  Essentially, Plaintiff argues
16  that Officers Stewart and Tharsing agreed to order Plaintiff to stay
17  the night at the halfway house so that Officer Stewart would have a
18  basis for arresting Plaintiff the next day for violation of
19  Plaintiff's parole condition prohibiting him from being within 100
20  yards of a school where children congregate.  Plaintiff argues these
21  contentions are supported by his deposition testimony that Officer
22  Stewart was present and overheard Officer Tharsing suggest to
23  Plaintiff that Plaintiff stay at the Lane Street Halfway House during
24  Plaintiff's first conversation with Officer Tharsing at the Sheriff's
25  Office.  However, these contentions are based on "[m]ere allegation
26  and speculation[, which] do not create a factual dispute for purposes
27  of summary judgment," since there is no evidence from which a
28  reasonable inference could be drawn that Steward and Tharsing spoke

about anything concerning Plaintiff.  Nelson v. Pima Community College, 83 F.3d 1075, 1081-82 (9th Cir. 1996).  "Such conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment."  Anheuser-Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 345 (9th Cir. 1995).

The evidence shows that Officer Stewart arrested Plaintiff after receiving notification over dispatch that Plaintiff had violated his parole.  (Stewart Dep. 9:24-11:9)  "[L]aw enforcement officers are generally entitled to rely on information obtained from fellow law enforcement officers."  Motley v. Parks, 432 F.3d 1072, 1081 (9th Cir. 2005). "[O]fficer Stewart was entitled to rely on the observations and knowledge of [Plaintiff's parole officer], even though some of the critical information had not been communicated to him." Id.(Internal quotations and citation omitted).

Plaintiff counters that Officer Stewart did not rely on information received from dispatch when he arrested him because Officer Stewart told him after he contacted him that he "was under arrest for staying at the halfway house."  (Armstrong Dep. 39:10-11.) However, this evidence does not controvert Officer Stewart's direct evidence that he also told Plaintiff he was arresting him for a parole violation.  (Stewart Dep. 11:17-19.)  Nor can a reasonable inference be drawn from the statement Stewart made about the halfway house when he arrested Plaintiff, since other than Plaintiff's testimony that Stewart mentioned the halfway when arresting Plaintiff, the only other evidence showing Steward was aware that Plaintiff may have stayed at the halfway house was Plaintiff's testimony that Steward overheard Tharsing's suggestion to Plaintiff that Plaintiff stay at the halfway

house when Tharsing first spoke to Plaintiff at the Sheriff's Office. Therefore, Stewart prevails on this portion of his motion.

C. **Plaintiff's official capacity claims against Officers Stewart and Tharsing**

Officers Stewart and Tharsing also seek summary judgment on Plaintiff's official capacity claims against them. Plaintiff has sued Officers Stewart and Tharsing in their official capacities, and has also sued the Siskiyou County Sheriff's Department. "An official capacity suit against a municipal officer is equivalent to a suit against the entity" for which the individual is employed. Center for Bio-Ethical Reform, Inc. v. L.A. County Sheriff's Dep't, 533 F.3d 780, 799 (9th Cir. 2008). "When both a municipal officer and a local government entity are named, and the officer is named [] in an official capacity, the court may dismiss the officer as a redundant defendant." Id.; see also Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under Monell . . ., local governmental units can be sued directly for damages . . ."). Since the official capacity claims against Officers Stewart and Tharsing are redundant of the claims against the Siskiyou County Sheriff's Department, this portion of the motion is granted.

D. **Plaintiff's *Monell* claim against the Siskiyou County Sheriff's Department**

Defendant Siskiyou County Sheriff's Department seeks summary judgment, arguing under Monell v. Dept. of Social Serv., 436 U.S. 658 (1978), Plaintiff cannot prevail on his claim against it. (Mot. Summ. J. 27:20-31:3.) Plaintiff alleges a § 1983 claim against the Siskiyou County Sheriff's Department. To prevail on this claim, Plaintiff

11

must "establish that [the Sheriff's Department] had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007) (quoting Monell, 436 U.S. at 694-95). Further, a Monell plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 285 (1989). The Sheriff's Department may also be liable "if it fails to properly train peace officers and the 'failure amounts to deliberate indifference to the rights of persons with whom the officers come into contact.'" Galen, 477 F.3d at 667 (quoting City of Canton, 489 U.S. at 388).

Plaintiff argues: "Although admittedly the evidence is not strong, a jury could infer that officer Tharsing's ordering of Armstrong to stay at the halfway house was pursuant to a Sheriff's Department policy from the fact that officer Tharsing first suggested the halfway house at the Sheriff's Office." (Plt.'s Opp'n 9:19-22.) However, this evidence is insufficient to support Plaintiff's position that Officer Tharsing's command that Plaintiff stay at the halfway house was pursuant to a municipal policy, custom, or practice. Nor has Plaintiff presented evidence of the Sheriff's Department's failure to properly train its officers to avoid issuing such commands. Therefore, the Siskiyou County Sheriff's Department prevails on its motion.

**E.   Third party defendant Bearden's motion to the third party complaint**

In light of the above rulings, the only remaining claims are the third party plaintiffs' claims against Alfred Bearden for

12

indemnity, contribution, and federal and state declaratory relief.  At the October 26, 2009 hearing on Bearden's dismissal motion, in which he seeks dismissal of the third party complaint, the third party plaintiffs' counsel conceded that the only basis for federal jurisdiction is 28 U.S.C. § 1367.  Since only state claims are left for resolution, the third party complaint will be dismissed without prejudice because the third party plaintiffs have not shown an appropriate basis for relief under the federal declaratory judgment statute.

"[T]he [federal] declaratory judgment statute is an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." Green v. Mansour, 474 U.S. 64, 72, (1985) (quotations omitted).  "The propriety of issuing a declaratory judgment may depend upon equitable considerations . . . and is also informed by the teachings and experience concerning the functions and extent of federal judicial power." Id.  Here, the third party plaintiffs could seek to have a state court issue whatever declaration they seek under federal law.  Since the federal declaratory relief they seek is duplicative of relief they could seek under state law, it is dismissed, and the third party complaint is dismissed under 28 U.S.C.§ 1367(c).  See Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice.").

## CONCLUSION

For the stated reasons, summary judgment is GRANTED in

1  favor of each Defendant and the third party complaint is DISMISSED.
2  The Clerk of the Court shall close this case.
3  Dated:  November 30, 2009

_____
GARLAND E. BURRELL, JR.
United States District Judge